98 F.3d 1347
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Noel Benjamin GIRARD, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
David HILLENBRAND, Defendant-Appellant.
 No. 95-10477, 95-10502.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 7, 1996.
Decided Oct. 11, 1996.
 
 Before: WOOD,* SCHROEDER and HALL, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 In these consolidated cases, Noel Girard and David Hillenbrand appeal their convictions, which followed a bench trial, for assisting in the preparation of false and fraudulent tax returns in violation of 26 U.S.C. § 7206(2). Both appellants claim the evidence was insufficient. Girard also contends that the district court abused its discretion by declining to hear evidence proffered to impeach a government witness. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.
 
 
 3
 We uphold a conviction if, viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. United States v. Vgeri, 51 F.3d 876, 879 (9th Cir.1995). We do not ask whether the evidence excludes every hypothesis except guilt, but rather whether the fact finder could reasonably have arrived at his verdict. United States v. Mares, 940 F.2d 455, 458 (9th Cir.1991).
 
 
 4
 Here, the government had to prove that: 1) the appellants aided, assisted, or caused the preparation and presentation of a return; 2) the return was false as to a material matter; and 3) appellants acted willfully. United States v. Salerno, 902 F.2d 1429, 1432 (9th Cir.1990).[1] To prove "willfulness," it is not enough to show that a defendant's belief in the lawfulness of his conduct was objectively unreasonable; the government must also negate "a defendant's claim ... that because of a misunderstanding of the law, he had a good-faith belief that he was not violating any of the provisions of the tax laws." Cheek v. United States, 498 U.S. 192, 202 (1991).
 
 
 5
 Girard and Hillenbrand were general contractors, required by law to pay significant taxes on the wages of their employees. Both were convicted upon evidence that they "laundered" their respective payrolls through Fred Vaught, a licensed independent contractor, in order to avoid the tax liability that attends the employer-employee relationship.
 
 
 6
 The evidence showed that Girard reported paying $42,456.00 in taxable wages during the four quarters relevant to his appeal. Over the same period, he reported paying Vaught $335,730.04. Hillenbrand reported paying $220,905.23 in taxable wages during the five quarters relevant to his appeal. Over the same period, he reported paying Vaught $635,673.65.
 
 
 7
 Vaught pleaded guilty to tax fraud. The evidence showed that though he had once been a contractor, at all times relevant to this appeal, he made his living from a barstool at the Rambler Bar in Orangevale, California, allowing general contractors to pay their workers under his license. Vaught did not own construction equipment or keep business records, and he did not know who or how many of appellants' workers were being paid through him.
 
 
 8
 Appellants filed documents with the IRS showing that they employed and paid by check a handful of workers doing clerical and pick-up jobs at low hourly wages. According to them, all the other people working on their construction sites were either independent contractors or employees of Fred Vaught.
 
 
 9
 Vaught did not report as earnings the 15% fee he charged for cashing Girard's and Hillenbrand's checks, nor did he report paying wages to those who worked under his license. He paid his "employees" in cash without taxes paid or withheld.
 
 
 10
 In 1991, Vaught's workers' compensation insurance was cancelled after more workers than he had listed in his application for coverage filed claims under his policy. So that he could continue offering his services, in April 1991, he changed his working name to Fred Ritter by making a fake identification card and retaking the contractors licensing exam. Both Girard and Hillenbrand cut him checks under both the names Vaught and Ritter.
 
 
 11
 Both appellants claim they did not perceive Vaught's true role in their operations because their dealings with him were mediated by their respective foremen. Thus, they argue, their conduct was not willful.
 
 
 12
 The record shows, however, that both Girard and Hillenbrand understood exactly what Vaught was doing, and that the difference between "their" employees and "Vaught's" employees was not in how much independence they enjoyed, but in how they were paid.
 
 
 13
 For example, when Hillenbrand's foreman, Stephen Holm, decided he would prefer to receive his wages in cash, Hillenbrand told him he would have to go on Vaught's payroll. Holm's duties and pay remained the same. Similarly, George Danino, an independent contractor, switched from Girard's payroll, on which his earnings were reported, to Vaught's without his responsibilities changing. In addition, both appellants paid Vaught without question even after he changed his identity.
 
 
 14
 Girard still insists that no intent to defraud the government can be inferred from his indiscriminate payment of workers through Vaught because even if he knew of it, he had nothing to gain by Vaught's tax fraud. We disagree. It was Vaught's noncompliance with the law that made him willing, on paper, to shoulder the tax responsibility Girard wanted to shift. Girard saved thousands of dollars in taxes by hiring the vast majority of his workers under Vaught's license.
 
 
 15
 Girard argues, alternatively, that his foreman, David Miley, who was paid through Vaught, exercised the authority of an independent contractor over everyone who worked under Vaught's license. Thus, he contends, the workers were not his employees but Miley's and, consequently, his tax returns were not false.
 
 
 16
 Uncontradicted evidence, however, belies this claim. Miley testified that, though he was paid through Vaught, he worked for Girard. He explained that Girard sent him workers, that he did not have authority to hire and fire without Girard's approval, and that Girard instructed him to "get rid of" anyone who would not work for cash.
 
 
 17
 The evidence easily supports the district court's determination that appellants' representation of Vaught as an independent contractor was false, material and willful. See Salerno, 902 F.2d at 1432. No reasonable person could have believed taxes could legally be so easily evaded. And neither Girard nor Hillenbrand put on any evidence that he held such an unreasonable belief in good faith. Accordingly, we conclude that the evidence supports the verdicts. See Cheek, 498 U.S. at 202.
 
 
 18
 Girard claims his conviction should be overturned because he was not allowed to put on evidence that police found drugs in Miley's house after Miley denied using drugs while he worked for Girard. We review the judge's ruling for an abuse of discretion. United States v. Blaylock, 20 F.3d 1458, 1462 (9th Cir.1994).
 
 
 19
 The Federal Rules of Evidence generally prohibit the introduction of extrinsic evidence of "specific instances of the conduct of a witness, for the purpose of attacking ... his credibility." Fed.R.Evid. 608(b). Girard insists that the discovery of drugs at Miley's house fit within an exception to Rule 608(b), allowing such evidence, "if probative of truthfulness or untruthfulness, [to] be inquired into on cross-examination ... concerning the witness' character for truthfulness or untruthfulness." Id.
 
 
 20
 The evidence does not plainly fall within that exception and even if it did, the district court had the discretion to exclude it. See id. In addition, we note that there is minimal risk of prejudice by the exclusion of evidence at a bench trial, that appellants impeached Miley extensively, and that the record reflects the district judge's energetic distrust of Miley's veracity. For these reasons, we discern no abuse of discretion. See Blaylock, 20 F.3d at 1462.
 
 
 21
 Finally, we reject Girard's suggestion in his reply brief that the district judge's observation that "Mr. Miley is a pathological liar" bound him to acquit Girard. That Miley is a liar does not prove that Girard is innocent.
 
 
 22
 AFFIRMED.
 
 
 
 *
 Honorable Harlington Wood, Jr., Senior United States Circuit Judge for the Seventh Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Appellants do not deny causing the preparation and presentation of a return